**Janice H. WILCOX, Plaintiff/Appellee,**

v.

**Timothy J. WILCOX, Defendant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 4, 1993.

Permission to Appeal Denied by Supreme Court Sept. 7, 1993.

Leroy J. Ellis, III, Mary Frances Rudy, Nashville, for defendant/appellant.

Robert Skinner, Jr., Nashville, for plaintiff/appellee.

## OPINION

LEWIS, Judge.

This is an appeal by defendant Timothy J. Wilcox (Father) from the trial court's grant of the plaintiff Janice H. Wilcox's (Mother) motion for summary judgment. The court, in granting the motion for summary judgment, determined that the Wilson County Circuit Court "was and is now the most convenient forum for adjudication" of the case, and found that the State of Tennessee was the home state of the Mother and the minor children. The order also granted the Mother a judgment against the Father for child support arrearage of $5,378.90, representing thirty-eight weeks of child support at $141.55 per week. The Mother was awarded attorney's fees in the amount of $5,977.50 which represented "legal expenses incurred to date for the services [of the attorney] in his representation of [the Mother] in these proceedings regarding the jurisdiction, custody, visitation, and child support issues of the parties' minor children." The court further found that it "had and continues to have home state jurisdiction over the parties', their Children and the facts in this cause pursuant to the provisions of T.C.A. 36–6–203(a)(1)(B), and other authority under the law and facts of the cause." The court also found that it "had and continues to have jurisdiction to modify the custody, visitation and child support decrees entered in the DeKalb County Circuit Court, DeKalb County, Indiana, pursuant to the provisions of T.C.A. 36–6–215(a) & (b)," and also found that the Father had "violated the provisions of the Uniform Child Custody Jurisdiction Act by failing and/or refusing to return the minor Children after his modified summertime visitation period thereby preventing [the Father] from relief under the provisions of the Act." The court also found that the Circuit Court for Wilson County "was and is now the most convenient forum for adjudication of this cause, the State of Tennessee being the home state of the Mother and the minor children and there being the substantial appropriate body of evidence for proof concerning the Children's past and future care, protection, training and personal relationships more readily available in this forum court's jurisdiction." The court also ordered that the Mother's "Petition for Continuing Decree of Custody should be and hereby is granted and that absolute custody, care and control of the parties' minor Children . . . is confirmed in the Mother . . . and the [Father] . . . is ordered to deliver the Children

to the [Mother] forthwith in Wilson County, Tennessee."

### THE FACTS

The parties were formerly married to each other and were divorced on 23 August 1989 by an order entered in the Circuit Court, DeKalb County, Indiana. The parties entered into a Property Settlement Agreement and Custody Stipulation on 23 August 1989. The DeKalb County divorce decree approved and made a part of the decree the Property Settlement Agreement and Custody Stipulation and recited that the parties reside in DeKalb County, Indiana, and that the Mother should have the care and custody of the parties' minor children with certain visitation rights to the Father, which were detailed in the court's order.

The Father at the time of the divorce was a resident of DeKalb County, Indiana, and continues to be a resident of DeKalb County. The parties and the two minor children lived in DeKalb County, Indiana, from the time of the birth of the children until the parties divorced. The Mother and the children then moved to Wilson County, Tennessee. The DeKalb Circuit Court order provided that upon the move to Tennessee, the Father's visitation would include each summer from the Monday after the end of school to 1 August, one week during alternate Christmas and spring vacations, and six weekends each year.

The issues regarding custody and visitation privileges were litigated in the DeKalb Circuit Court in 1989 and 1990, following the divorce. The DeKalb Circuit Court modified the visitation provisions of the decree by orders entered 18 December 1989, 17 July 1990, 3 August 1990, and 29 November 1990.

The first pleading filed in the Circuit Court for Wilson County, Tennessee, was the Mother's petition filed on 14 December 1990, which sought a finding of contempt, injunctive relief, an increase in child support, support arrearages, and a prayer that "[a]ll decisions regarding [the] custody, visitation, and child support be made in Tennessee." The Mother sought and was granted a restraining order and a show cause order. In the amended petition for contempt filed by the Mother on 9 January 1991, it is stated that the original petition and both orders were served on the Father on 14 December 1991, before he picked up the children for their weekend visitation.

Following the filing of several other pleadings, motions and affidavits, the entry of several orders, the filing of certified copies of the case history, orders entered in the Circuit Court for DeKalb County, Indiana, and copies of the Property Settlement Agreement and Custody Stipulation, an evidentiary hearing was held in the Circuit Court for Wilson County on 5 June 1991. The trial court's order was entered on 1 July 1991, and, regarding child custody jurisdiction of the Indiana Court, the Circuit Court for Wilson County found and ordered as follows:

[T]he DeKalb Circuit Court in that proceeding had and exercised personal jurisdiction over the parties, and exercised and retains jurisdiction to make child custody determinations with respect to the minor children of the parties under jurisdictional prerequisites substantially in accordance with the Tennessee Uniform Child Custody Jurisdiction Act and the Federal Parental Kidnapping Prevention Act, and under factual circumstances meeting the jurisdictional standards of said Acts[.]

Regarding the custody jurisdiction of the Circuit Court for Wilson County, the court stated in its order:

The Court finds that, following the parties' divorce, the Mother and children removed to Tennessee and now make their home in Wilson County; that the Father has remained a resident of DeKalb County, Indiana; that Tennessee was the home state of the children at the time of the filing of the Mother's first Petition in this cause, on December 14, 1990; and that this Court has jurisdiction to make a custody determination concerning the said children, by modification decree, subject to restrictions on the exercise of such jurisdiction as provided by the Tennessee Uniform Child Custody Jurisdiction Act and the Federal Parental Kidnapping Prevention Act.

The court further found and ordered as follows regarding summer visitation:

By Order entered on January 23, 1991, this Court suspended the Father's child visitation until he should ask this Court for further hearings. The Court finds that the Father's Motion seeking to have that Order set aside should be and it hereby is granted. However, it appears to the Court that under the Orders of the DeKalb Circuit Court the Father's extended summer child visitation with both children was to begin on the first Monday following the end of their school year, or Monday, June 3, 1991, and to continue until August 1, 1991. The Court finds that both children are enrolled in educational classes that began on June 3, 1991, and continue until June 15, 1991, in Wilson County, Tennessee, that Courtney has a dance recital here on or about June 28, 1991. The Court finds that it would be in the best interest of the children to continue in those classes, to return for Courtney's dance recital and to extend the summer visitation into August, 1991. It is, therefore, ordered that this Court's Order entered on January 23, 1991, is set aside, the summer visitation of the children with the Father is deferred to begin on June 15, 1991, and shall continue until August 17, 1991; but the children will visit with the Mother in Wilson County for three (3) days for Courtney's dance recital that is scheduled on or about June 28, 1991.

In that order the Court also increased the child support payable by the Father to $141.55 per week and the support was subject to abatement of one-half of the child support when the Father had the children for seven or more days of visitation as was also provided by the orders of the DeKalb County, Indiana Circuit Court. The Court went on to dissolve the restraining orders that had been issued against the Father and also found that the Father was not in contempt.

The children began their summer visitation with the Father on 15 June 1991, following the hearing in the Wilson County Circuit Court on 5 June, but before the entry of the order on 1 July 1991.

On 14 August 1991, the Father filed a petition in the Circuit Court for DeKalb County, Indiana, and sought temporary and emergency custody of the children and a change of custody from the Mother to the Father. Temporary and emergency custody was granted by an order of the DeKalb County Circuit Court on 16 August 1991. The only notice the Mother received of this action before the entry of the Order was a telephone call from the Father on 14 August 1991. The Father then kept the children under his care and custody, relying on the order of the DeKalb County Circuit Court.

On 22 August 1991, the Mother filed a petition for contempt for the failure of the Father to return the minor children to her and alleged that this was in contempt of the Wilson County Circuit Court's order of 1 July 1991. She also sought arrearages in child support and attorney's fees. The Wilson County Circuit Court issued a show cause order and on 6 September 1991, the Father filed his answer to the petition, denying all material allegations, and also sought a motion for summary judgment and the dismissal of the Mother's petition. The hearing on the show cause order was continued, and 2 October 1991 was set for a hearing on the show cause order and the Father's motion for summary judgment.

On 2 October 1991, the Father filed a motion for continuance on the ground that he was subject to arrest on a warrant obtained by the Mother in Wilson County, Tennessee, on 25 September 1991, which charged him with the offense of custodial interference, if he appeared at the contempt hearing. He asserted his right to resist extradition, and enforcement procedures brought in Indiana, and requested the continuance so as not to deprive him of his right to resist extradition.

The Father did not personally appear at the hearing on 2 October 1991, but he was represented by counsel. The trial court heard argument of counsel and considered the record, but no testimony was heard. By order entered on 9 October 1991, the Wilson County Circuit Court denied the Father's motion for summary judgment and continuance, found the Father in contempt for his failure or refusal to return the children to

the Mother, but ordered "that the imposition of sentence shall be stayed until he is presented to this Honorable Court in open court."

On 9 October 1991, the Mother was also granted leave to amend her petition for contempt to add her petition for a decree of custody. The amended petition asserted various grounds under the Tennessee Uniform Child Custody Jurisdiction Act (UCCJA)[1] for the exercise of modification jurisdiction by the Circuit Court for Wilson County, rather than the DeKalb County, Indiana, Circuit Court, and asked that the Mother be granted custody of the children. The petition also requested that the Wilson County Circuit Court inform the DeKalb County Circuit Court that its custody proceeding was commenced after the State of Tennessee assumed jurisdiction and that the issues should be litigated in Tennessee as the more appropriate forum.

The Father filed an answer to the petition on 7 November 1991, which denied the material allegations of the petition as to jurisdiction, asserted that the Indiana Court had and retained modification jurisdiction and denied that the amended petition stated grounds for a change of custody to the Mother. He simultaneously filed a motion to alter or amend the 9 October 1991 order to provide that his failure to return the children to the custody of the Mother did not place Father in contempt of the previous orders of the Wilson County Circuit Court because the DeKalb Circuit Court of Indiana properly exercised its jurisdiction over the parties and he justifiably relied on its 19 August 1991 order in not returning the children. The motion further sought dismissal of the Mother's petition for contempt.

On 8 January 1992, the Mother filed a motion asking the Wilson County Circuit Court to communicate with the judge of DeKalb Circuit Court in DeKalb County, Indiana, relative to the petition for modification of custody that was then pending in Indiana and a determination of the more

appropriate custody forum. At the hearing on 5 February 1992 on the motions to alter or amend and to communicate, the trial judge of the Wilson County Circuit Court held that the Wilson County Circuit Court had and continued to have home state jurisdiction over the Father and that the Father would be denied any relief for his contravention of the court's orders and his failure to personally present himself before the court. The order was silent as to the Mother's motion to communicate with the Indiana Court, but the Court announced at the hearing that it would not communicate with the judge of the DeKalb County, Indiana Court.

Subsequently, both the Mother and the Father filed motions for summary judgment. On 6 May 1992, both motions for summary judgment were heard, and on 20 May 1992 an order was entered in the Circuit Court for Wilson County finding that it (1) had and continued to have home state jurisdiction; (2) had and continued to have jurisdiction to modify the custody, visitation and child support decrees entered by the Indiana Court; and (3) was and is now the most convenient forum for adjudication of this case. The order of the Wilson County Court also denied the Father's motion for summary judgment, granted the Mother's motion for summary judgment, ordered that the custody of the children be confirmed in the Mother and that the Father deliver the children to her, awarded the Mother a judgment for accumulated child support arrearages, and also awarded the Mother a fee for her attorney in the amount of $5,977.50.

The Father appealed the May 20, 1992 order of the Wilson County Circuit Court and oral argument was heard by this court on January 5, 1993.

A unanimous opinion was filed by the Tennessee Supreme Court on February 1, 1993 in the case of *Brown v. Brown*, 847 S.W.2d 496 (Tenn.1993), concerning interstate custody disputes. The parties were subsequently ordered to file briefs regarding the impact of

---

1. Tennessee's version of the UCCJA is codified as T.C.A. § 36-6-201 to 225. Although it bears the title "Uniform Child Custody Jurisdiction Act," it is "non-uniform" with the original UCCJA in one

very important respect. *Brown v. Brown,* 847 S.W.2d 496, 500 (Tenn.1993). That Tennessee difference is explained at page 13 of this opinion.

*Brown v. Brown* on the facts of the instant case.

The parties have raised numerous, often overlapping, issues on appeal. However, it is necessary to determine which court properly has jurisdiction to hear an interstate child custody dispute under the applicable statutes before we can accurately decide which issues are relevant. In order to interpret the statutes and reach a conclusion regarding jurisdiction, it is helpful to first review the history of child custody jurisdiction provided by the Tennessee Supreme Court in the case of *Brown v. Brown*, 847 S.W.2d 496 (Tenn. 1993). Since *Brown* is such a recent decision and we could not possibly improve on what Justice Daughtrey said so well, we quote extensively from her opinion:

### 1. *Child Custody Jurisdiction*

### [A. History]

Traditionally, jurisdiction to determine a child custody dispute was based on the child's domicile (which, under the common law, was the father's domicile.) [footnote 1] Because of the nature of such disputes, however, the rule of domicile was considered unworkable by many courts, because, strictly applied, it left them without authority to act in the best interest of a child who was before the forum and in grave need of protection. Gradually, courts began to assume and exercise jurisdiction in those custody-related matters involving children who were present in the state.

---

1. For a discussion of the background of the UCCJA, *see* Homer Clark, *Domestic Relations* § 13.5 pp. 774–782 (2d ed. 1985).

But this solution soon proved unworkable, too, because it unintentionally fostered "child-snatching"—the search for a friendly forum by a non-custodial parent or guardian seeking to overturn an unfavorable decree from another state. As divorce became more common and society more mobile, the volume and complexity of interstate child custody decrees increased dramatically. The courts in most states did not extend full faith and credit to the custody orders of their sister states, because of the inherently modifiable nature

of those decrees. The full faith and credit doctrine requires the forum state to enforce a foreign decree, but only to the extent that it was enforceable in the rendering state. Because child support decrees are subject to modification in the rendering state until the child reaches the age of majority, the forum state considered itself equally free to modify the decree. This rule was approved by the United States Supreme Court on several occasions. *See, e.g., People of State of New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947).

As the interstate trafficking in competing child custody decrees became more serious, there was some hope that the United States Supreme Court would remedy the situation by reversing its previous position and holding that such orders were entitled to enforcement under the Full Faith and Credit Clause. But, given the opportunity to do so in *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953), the Court instead decided the case on an alternative ground, holding that a custody order is not entitled to full faith and credit if the rendering state lacked personal jurisdiction over the defendant. [footnote 2]

---

2. As many courts and commentators have noted, this ruling by the United States Supreme Court has largely been ignored. Neither the Uniform Child Custody Act nor the Parental Kidnapping Prevention Act requires personal jurisdiction over a respondent, although they do contain provisions for notice and a hearing. Some concern has been expressed that if the rule in *May v. Anderson* were to be enforced, the purposes of both the UCCJA and the PKPA would be frustrated. Clark, *supra*, at n. 1, p. 792. The issue is moot in the cases currently before us, because the Tennessee courts had personal jurisdiction over the parties in both instances.

More significant than the majority opinion in *May*, however, was Justice Frankfurter's concurring opinion, in which he suggested that even if full faith and credit is not constitutionally required, comity should be extended to foreign decrees in order to avoid child-snatching, forum-shopping, and the like. *Id.* at 535, 73 S.Ct. at 844 (Frankfurter, J., concurring). A large number of state courts acted on this sug-

gestion, at least for a time. But comity in child custody cases turned out to be more honored in the breach than in the application, as local courts found ways to avoid enforcement of existing out-of-state orders on one legal pretext or another.

In response to mounting concern, the Uniform Commissioners promulgated the Uniform Child Custody Jurisdiction Act in 1968, with the express intent of eliminating interstate competition over custody matters, child-snatching, and unauthorized holdovers following authorized visitation periods. The various state legislatures were slow to adopt the measure, however, and momentum in favor of the UCCJA did not pick up speed until the late 1970s.

Finally, by 1980, most states had adopted the UCCJA, or some variation of it, but there were still a number of holdouts. At this point, the United States Congress stepped in, enacting 28 U.S.C. § 1738A, the Parental Kidnapping Prevention Act. Framed in much the same language as the UCCJA, although not identical to it, the PKPA was meant to make child custody jurisdiction uniform throughout the 50 states and thus prevent the non-UCCJA states from becoming havens for forum-shoppers and child-snatchers.

In effect, the PKPA requires that full faith and credit be given to foreign custody decrees, to the extent that the other state's "child custody determination [was] made consistently with the provision of [the PKPA]." 28 U.S.C. § 1738A(a). The significance of this provision has been diminished by the adoption of the UCCJA in some form in all 50 states. Nevertheless, as federal law the PKPA is pre-emptive, and it controls in any case in which there is a conflict between federal and state law. As this opinion demonstrates, the most significant difference between the PKPA and the UCCJA is the fact that under the Uniform Act, more than one state may have jurisdiction over a child custody matter at any given point in time, while under the PKPA, jurisdiction is theoretically limited to a single state, depending on the facts of the case.

### [B. Tennessee Statute]

Tennessee's version of the UCCJA is codified as T.C.A. §§ 36–6–201—225. Since its enactment in 1979, there have been no amendments to and relatively few reported decisions concerning the statute. It bears the title Uniform Child Custody Jurisdiction Act despite the fact that it is "non-uniform" with the original UCCJA in one very important respect.

The purposes of the UCCJA and the Tennessee statute are identical, however. And, because the need for uniformity among jurisdictions is so pressing, it can be argued that the statutory purposes set out in T.C.A. § 36–6–201 carry more than ordinary weight in the interpretation of other provisions in the act. They speak of the need to "[a]void jurisdictional competition and conflict with the courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being"; the need to "[p]romote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child"; the need to "[a]ssure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and [assure] that [Tennessee] courts decline exercise of jurisdiction when the child and his family have a closer connection with another state;" the need to "[d]iscourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child"; and the need to "[d]eter abductions and other unilateral removals of children", to "[a]void re-litigation," to "[f]acilitate enforcement of custody decrees" of sister states, to promote cooperation between courts, and to make the custody laws uniform. T.C.A. § 36–6–201.

The Tennessee statute tracks the UCCJA's definitional provisions closely,

the most significant section for purposes of this opinion being that found in T.C.A. § 36–6–202(5):

"Home state" means the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as a parent, for at least six (6) consecutive months. . . . Periods of temporary absence of any of the named persons are counted as part of the six (6) months. . . .

The "home state" definition is vital to an understanding of the two cases involved in this appeal, because under the Tennessee statute (but not the UCCJA), *the courts of this state have jurisdiction to make or modify a child custody order if Tennessee is "the home state of the child at the commencement of the proceeding" or was the child's home state "within six (6) months before commencement of the proceeding"* and the child has been taken outside Tennessee by a person claiming custody, leaving one parent (or "a person acting as parent") in Tennessee. T.C.A. §§ 36–6–203(a)(1)(B) [ (emphasis added) ]. In other words, if Tennessee has been the child's "home state" and the child is now in another jurisdiction, Tennessee continues to be the child's home state for an additional period of six months following removal, at which point the other state becomes the child's "home state," based on the child's presence there for a period of six consecutive months.

If Tennessee is *not* the child's "home state," a Tennessee court may assume jurisdiction only upon a finding that *no other state qualifies* as the child's "home state", or that the "home state" has declined to exercise jurisdiction and deferred to Tennessee as "the more appropriate forum to determine the custody of the child." T.C.A. § 36–6–203(a)(2)(A) and (3). Upon such a finding, a Tennessee court has jurisdiction to determine or modify custody if it also finds (1) that "[t]he child and at least one contestant have a significant connection with this state", (2) that "[t]here is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal re-

lationship," *and* (3) that "[i]t is in the best interest of the child that a court of this state assume jurisdiction." T.C.A. § 36–6–203(a)(2).

Tennessee thus sets up a priority of circumstances to establish jurisdiction. Only if there is no "home state" jurisdiction or the "home state" defers to Tennessee can a Tennessee court exercise jurisdiction based on a "significant connection" with the child. Under this scheme, jurisdiction exists in only one state at a time. As it turns out, this approach is identical to the jurisdiction provision in the PKPA, but it is significantly different from the UCCJA's jurisdictional scheme, and thus different also from [provisions of states which adopted the truly "uniform" UCCJA].

### [C. UCCJA and PKPA]

Under the [model] UCCJA, jurisdiction may exist in more than one jurisdiction at a time. To avoid conflict, competition, and relitigation, the UCCJA encourages courts with simultaneous jurisdiction to communicate and cooperate with each other and, when appropriate, to defer to one another. Hence, [in states which adopted the UCCJA a] court in those states could exercise jurisdiction on either a "home state" or a "significant connection" basis, while Tennessee could assume "significant connection" jurisdiction only if there were *no* "home state."

Perhaps because Congress recognized that courts with simultaneous jurisdiction might not cooperate or defer, as the UCCJA requires, or that it was unrealistic to expect full cooperation or deference, the PKPA follows the prioritized model also utilized by the Tennessee statute.

### [D. Consistent Provisions]

In most other respects, however, all the statutes—the UCCJA, the PKPA, and the Tennessee version of the Uniform Act—are consistent with each other. Thus, the statutes . . . provide, in those parts pertinent to this litigation, that "a court of this state *shall not exercise its jurisdiction*

under this [act] if at the time of filing the petition a proceeding concerning the custody of the child was *pending* in a court of another state exercising jurisdiction substantially in conformity with this [act], unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum for other reasons." T.C.A. § 36–6–207(a) [Uniform Child Custody Jurisdiction Act (U.L.A.) § 6(a)].... (emphasis added). The PKPA likewise mandates deferral: "A court of a State *shall not exercise jurisdiction* in any proceeding for a custody determination commenced *during the pendency* of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination." 28 U.S.C. § 1738A(g) (emphasis added).

Under [Tennessee and UCCJA] state statutes, the trial court is required to make a full inquiry of the parties and the pleadings, to determine whether there are simultaneous proceedings pending in other states, including a "direct ... inquiry to the state court administrator or appropriate official of the other state." T.C.A. § 36–6–207(b); [UCCJA (U.L.A.) § 6(b)].... Moreover, "[i]f the Court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum." T.C.A. § 36–6–207(c); [UCCJA (U.L.A.) § 6(c)].... Even if a court in one state has entered a custody decree "before being informed of a proceeding pending in [the other state]," that court must communicate with the other court "to the end that the issues may be litigated in the more appropriate forum." *Id.*

Finally, [Tennessee and UCCJA] statutes require the recognition and enforcement of foreign decrees "of another state which had assumed jurisdiction under statutory provisions substantially in accor-

dance with this [act]," T.C.A. § 36–6–214; [UCCJA (U.L.A.) § 13] ..., and restrict the jurisdiction of the forum court to modify an initial custody decree or a modification order of the rendering state. *See* T.C.A. § 36–6–215(a), [UCCJA (U.L.A.) § 14(a)], which prohibit modification of a foreign decree "unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this [act] or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction." The PKPA modification provision is substantially the same. It permits modification by the forum state of an existing decree of the rendering state only "if (1) [the forum court] has jurisdiction to make such a child custody determination; and (2) the [rendering] court no longer has jurisdiction to modify [the] custody determination [in question]." 28 U.S.C. § 1738A(f).

....

This somewhat superficial summary of key provisions of the relevant statutes provides a general idea of what turns out to be a fairly complex scheme—complex in the sense that the state and federal statutes, while espousing the same goals, are not a perfect fit. As one noted commentator has observed, the terms of the UCCJA and the PKPA are "full of loopholes" and "technical enough to delight a medieval property lawyer." Clark, *Domestic Relation* § 13.5, 822, 825 (2d ed. 1985).

*Brown v. Brown,* 847 S.W.2d 496, 498–502 (Tenn.1993).

### Indiana Statute

Indiana has adopted the UCCJA with some minor variations not relevant to this case. However, even though the Indiana statute is non-uniform, it, like the Tennessee statute, carries the title UCCJA. Section 3 governs the jurisdiction of Indiana courts in interstate child custody disputes and is identical to the provisions of the model UCCJA.

Indiana courts have jurisdiction to make custody determinations if 1) Indiana is or has

been the child's home state within six months of commencement of the proceeding; *or* 2) it is in the best interest of the child for an Indiana court to assume jurisdiction because (a) the child and at least one contestant[2] have a significant connection with the state, and (b) there is available in the state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; *or* 3) the child is physically present in the state and (a) has been abandoned or (b) needs emergency protection because of actual or threatened abuse or mistreatment or has been neglected or is dependent; *or* 4) (a) no other state has jurisdiction or another state has declined to exercise its jurisdiction because Indiana is the more appropriate forum to determine custody, and (b) it is in the best interest of the child for the Indiana court to assume jurisdiction. Ind.Code Ann. § 31–1–11.6–3(a)(1)–(4) (1979). In addition, the Indiana UCCJA section conferring jurisdiction states that "[p]hysical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody." Ind.Code Ann. § 31–1–11.6–3(c) (1979).

### *Application of the Tennessee UCCJA and the Indiana UCCJA*

The Father is and has been a resident of DeKalb County, Indiana all of his life. The parties and their children lived in DeKalb County, Indiana from the time of the birth of the children until the divorce was granted in August 1989. There can be no question but that Indiana was the home state of these children at the time of the divorce and that the DeKalb County Circuit Court properly exercised jurisdiction in granting the divorce and making child custody determinations.

The Mother moved to Tennessee with the children shortly after the divorce. However, as previously noted, the Indiana court continued exercising its jurisdiction by modifying the original decree in December 1989, and in July, August, and November 1990. The Mother had been found in contempt of the DeKalb County court in July 1990.

The Mother initiated this action in the Wilson County court in December 1990. She sought to have all custody, visitation and child support decisions made by the Tennessee court. Additionally, she requested that the Father be found in contempt of the Indiana order by the Tennessee court, that child support be increased, and that several other items be resolved in her favor by the Tennessee court.

The Tennessee UCCJA requires that:

Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information [regarding the child].... In this pleading or affidavit every party shall further declare under oath whether:

(1) The party has participated ... in any other litigation concerning the custody of the same child in this or any other state;

T.C.A. § 36–6–210(a).

The Petition for Judgment and/or Contempt of Court, filed by the Mother in Wilson County on December 14, 1990, merely states that the original judgment was granted in Indiana. She filed a Notice of Filing of Foreign Decree on the same date.

The Tennessee statute further provides that:

(a) If a court of another state has made a custody decree recognizable and enforceable under § 36–6–213, a court of this state shall not modify that decree unless:

(1) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree; and

(2) The court of this state has jurisdiction.

T.C.A. § 36–6–215(a).

The Tennessee court was aware of the Indiana custody decree and that the Father still resided in DeKalb County, Indiana. The Father, in the Respondent's Memorandum in

---

2. A contestant is defined as someone, including a parent, who claims to have custody or visitation rights.

Support of Dismissal filed with the Wilson County Circuit Court on January 9, 1991, specifically informed the court that the parties had been back before the Indiana court several times, the last being July 17, 1990 when the Mother had been found in contempt. The memorandum further alleged that the Wilson County court did not have personal jurisdiction over the Father[3], who was making a special appearance by and through his attorney to contest jurisdiction, and pointed out that the Indiana court had not relinquished its jurisdiction over the matter.

The Wilson County Circuit Court issued an order on 23 January 1991 in which it declared Tennessee the home state of the children and summarily decided that Tennessee could "best determine [what] is in the children's best interest." The order purported to suspend all visitation with the children by the Father until he requested further hearings on the matter. No mention was made of the Tennessee UCCJA or the federal PKPA or of any other jurisdiction conferring statute.

The Tennessee court clearly violated both the restrictions and underlying intent of the Tennessee UCCJA. The Tennessee statute, which varies from the model UCCJA in that it further restricts jurisdiction, gives a Tennessee court jurisdiction if: 1) Tennessee is "the home state of the child at the time of commencement of the proceeding;" or 2) no state has home state jurisdiction or each state with home state jurisdiction has declined to exercise it on the ground that Tennessee is the more appropriate forum *and* the child and a contestant have a "significant connection" with Tennessee, *and* there is "substantial evidence" in Tennessee regarding the child, *and* it is in the child's best interest that Tennessee assume jurisdiction, or 3) no state has home state jurisdiction or significant connection/substantial evidence jurisdiction or each state with such jurisdic-

tion has declined to exercise it because Tennessee is the more appropriate forum and it is in the best interest of the child that Tennessee assume jurisdiction. T.C.A. § 36-6-203(a). Except in the third scenario, physical presence of the child is not alone sufficient to confer jurisdiction on a Tennessee court. T.C.A. § 36-6-203(b). In addition, jurisdiction "shall not" be exercised to modify an existing custody decree except in accordance with T.C.A. § 36-6-215. T.C.A. § 36-6-203(d).

T.C.A. § 36-6-215 prohibits modification of an interstate custody decree unless 1) the other state no longer has jurisdiction or has declined to exercise its modification jurisdiction, and 2) Tennessee has jurisdiction.

■ The Tennessee court declared this state to be the "home state" of the children because they had lived in Tennessee for over a year. However, this ignores the statutory pronouncement that physical presence of children in Tennessee does not alone confer custody jurisdiction. T.C.A. § 36-6-203(a) gives Tennessee jurisdiction if it's the "home state ... at the time of commencement of the proceeding." Home state is defined as where the child lived for at least six months "immediately proceeding the time involved." T.C.A. § 36-6-202(5). It is the finding of this court that the "commencement of the proceeding" and "time involved" do not refer to the initial filing in a Tennessee court on December 14, 1990. Rather, because there were ongoing proceedings in Indiana, the relevant time period was when the parties filed for divorce in Indiana. The Indiana court, as admitted in subsequent orders of the Wilson County Circuit Court, at all times retained and continued to exercise custody jurisdiction under the Indiana UCCJA, and the Tennessee UCCJA restricts jurisdiction to one state at a time. Therefore, Tennessee never became the home state, under our reading of *Brown*.[4]

---

3. As noted in *Brown v. Brown,* some confusion exists regarding the need for personal jurisdiction over a party in interstate child custody disputes. Because of the ultimate decision in this case, it is not necessary to determine whether Tennessee had personal jurisdiction over the Father.

4. In the first of the two cases decided in *Brown* the child had lived in Tennessee for ten months after her move with her mother from Hawaii. Our Supreme Court declared Tennessee the home state "[w]ithout question," but no court had previously acted regarding the child. Georgia was found to be the home state in the second

Had the Indiana court lost its home state standing, through inactivity in the case after the children moved to Tennessee with the Mother, then Tennessee could have become the new home state. However, because of the periodic modification of its own orders, Indiana remained the home state even though the children lived in Tennessee. Therefore, Tennessee could not claim custody jurisdiction under scenario one above.

Tennessee could not claim custody jurisdiction under scenario two because Indiana had home state jurisdiction and did not decline to exercise it. The same holds true for scenario three.

■ However, our holding today does not rest solely on the home state issue. T.C.A. § 36-6-203. The section of the Tennessee UCCJA which grants jurisdiction, prohibits the exercise of jurisdiction to modify an interstate custody decree except in accordance with T.C.A. § 36-6-215. T.C.A. § 36-6-203(d). Section 215 states that a Tennessee court *shall not* modify another state's custody decree unless the other state lost or declined to exercise its jurisdiction and Tennessee has jurisdiction. Again, Indiana had neither lost nor declined to exercise its jurisdiction and there was no explanation of the Tennessee court's determination that it had jurisdiction.

As explained in *Brown v. Brown*, under the Tennessee scheme jurisdiction exists in only one state at a time. *Brown v. Brown*, 847 S.W.2d 496, 501 (Tenn.1993). If Indiana still had home state jurisdiction then Tennessee did not have jurisdiction in any form since Indiana continued to exercise its jurisdiction. Even if Tennessee did have home state jurisdiction, the Wilson County court was prohibited by § 215 from modifying the Indiana decree under the existing posture. Therefore, if Indiana still had jurisdiction, as it did by the admission of the Tennessee court in its July 1, 1991 order, Tennessee did not have custody jurisdiction.

*Brown* case when the child had lived there with her mother for two years and nine months after a Tennessee divorce without further court intervention. We consider the lack of court involvement and the lengthy period of inactivity to be significant factual disparities from the instant

In addition, § 207(a) specifically states that a Tennessee court shall not exercise its jurisdiction "if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." T.C.A. § 36-6-207(a). So even if Tennessee had jurisdiction as the home state or by some other means, it was prohibited from acting in the instant case by the Tennessee UCCJA.

Also as pointed out in *Brown*, because of the need for uniformity, the statutory purposes carry more than ordinary weight in the interpretation of other provisions of the UCCJA. To "avoid jurisdictional competition," "promote cooperation," "discourage continuing controversies," and for the other stated reasons, the Tennessee court, if it truly had jurisdiction, should have entered into a dialogue, as requested, with the Indiana court to determine which state was the most appropriate forum. But either way, under the facts of this case the Wilson County Circuit Court did not have jurisdiction to modify the Indiana decree unless the Indiana court declined to exercise its jurisdiction.

### Parental Kidnapping Prevention Act

■ The PKPA requires that full faith and credit be given to custody decrees from other states if they were made consistently with the provisions of the PKPA. It is, as federal law, preemptive under the supremacy clause in the event of a conflict between state and federal law. *Brown v. Brown*, 847 S.W.2d 496, 499 (Tenn.1993).

The PKPA states that:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

case which justify a different result where the Indiana court acted several times to modify its original decree and proceedings were ongoing at the time the Tennessee court was first approached.

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or ...

.    .    .    .    .

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

.    .    .    .    .

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State....

28 U.S.C. § 1738A

■ At the time the Indiana court began hearing proceedings which led to its original custody decree, all of the parties had resided in Indiana for an extended period of time. The Indiana UCCJA gave the DeKalb County Circuit Court jurisdiction to hear the case and Indiana was the home state of the children on the date of the commencement of the proceeding. Therefore, subsections (c)(1) and (c)(2) were satisfied. The court had continuing jurisdiction, under (c)(2)(E), pursuant to subsection (d). The DeKalb County court retained its jurisdiction because

Indiana law allowed it to [5] and the Father still resided in Indiana. 28 U.S.C. § 1738A(d). Therefore, Indiana properly had jurisdiction to modify its earlier decree, under the PKPA.

Tennessee, however, did not have modification jurisdiction under the PKPA because its laws, as previously explained, did not grant it jurisdiction and because the Indiana court still had jurisdiction and had not declined to exercise it. This happens to also be the result reached under the Tennessee UCCJA. However, had Tennessee not adopted its prioritized scheme the PKPA would be controlling and it prohibits Tennessee from acting because Indiana retained its jurisdiction and only one state has jurisdiction at a time under the PKPA.

### Issues Raised by the Parties

The Mother strenuously argues that the Indiana court "lost" its modification jurisdiction when it issued its temporary order granting custody to the Father because the court failed to provide the Mother with reasonable notice and an opportunity to be heard as required by both the Tennessee and Indiana UCCJA and the PKPA. It is her contention that said failure meant the Indiana court was not "exercising jurisdiction substantially in conformity with [the UCCJA]," T.C.A. § 36–6–207(a), and the Tennessee court was therefore under no obligation to defer to the Indiana court. However, this argument fails because, as previously determined, the Tennessee UCCJA and PKPA do not give Tennessee concurrent jurisdiction. Rather, they provide that Indiana has exclusive jurisdiction over this case in its current posture. The Indiana UCCJA does substantially conform to both the Tennessee and model statutes. The Indiana order complained of was temporary on its face. Given Tennessee's lack of jurisdiction, it is beyond the province of this court to rule on the sufficiency of any notice given to the Mother. She must resort to the Indiana courts for any relief due to inadequate notice. We do note

---

**5.** Indiana had home state jurisdiction "at the time of commencement of the proceeding" and thereafter because it had continued acting in the case from the initial custody decree until after the Tennessee petition was filed. Its laws gave the DeKalb County court modification jurisdiction. Ind.Code Ann. § 31–1–11.6–3(a)(1) (1979).

in passing, however, that the Mother received actual notice of the petition by the Father for temporary custody via a telephone call from him on 14 August 1991, the same day he filed the petition.

We have considered each of the issues raised by the parties and, except as discussed here, we find them to be without merit.

Because the Circuit Court for Wilson County did not have subject matter jurisdiction, the judgment entered is void and must be vacated and the case dismissed. Costs are assessed one-half to the Mother and one-half to the Father.

TODD, P.J., and KOCH, J., concur.