768 So.2d 194 (2000)
David L. BONAR
v.
Kimberly Adams BONAR.
Kimberly Adams Bonar
v.
David L. Bonar.
Nos. 00-CA-232, 00-CA-233.
Court of Appeal of Louisiana, Fifth Circuit.
August 29, 2000.
*195 David Greenberg, Molaison, Loeb, Greenberg & Zelenka, L.L.P., Gretna, Louisiana, Counsel for Kimberly Adams Bonar, Defendant-Appellant.
Pat M. Franz, Metairie, Louisiana, Counsel for David L. Bonar, Plaintiff-Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This is a dispute over child custody and visitation and the applicability of the Uniform Child Custody Jurisdiction Act. The mother, the domiciliary parent, lives in Georgia; the father is a Louisiana resident. The divorce and original custody/visitation proceedings were initiated in Louisiana. In 1997 and 1998 the parties agreed in consent judgments that the Louisiana court would have exclusive continuing jurisdiction over the matter. Nevertheless, in 1998 a court in Georgia ruled that it had jurisdiction over the matter and issued a judgment therein pursuant to the mother's petition. The Louisiana court has rejected the mother's exceptions to jurisdiction in Louisiana and the Georgia court has rejected the father's objection to jurisdiction in Georgia.
At issue is whether Louisiana has continuing jurisdiction pursuant both to the father's continuing domicile within this state as well as both parents' agreement in a judgment to the retention of jurisdiction by Louisiana, or whether Louisiana must defer jurisdiction to the State of Georgia.
David L. Bonar and Kimberly Adams Bonar were married in 1985 in Georgia and thereafter established their matrimonial domicile in Jefferson Parish, Louisiana. On July 30, 1997 both parties filed for divorce in Jefferson Parish and the suits were consolidated. On March 18, 1998 a judgment of divorce was rendered in Jefferson Parish, Louisiana.
*196 On August 18, 1997 a consent judgment was rendered. It granted the parties joint custody of the two minor children of the marriage and designated Kimberly Bonar as primary custodian and domiciliary parent. The judgment stated that the children were to reside with Kimberly Bonar in the State of Georgia "for the foreseeable future," with the condition that the children should be able to elect the parent with whom they will reside after completion of their sophomore year in high school. The judgment further provided for child support payments by David Bonar to Kimberly Bonar which would not be subject to review or modification for five years, set a specific schedule for visitation, and made other provisions concerning financial matters. Finally, both parties agreed that "this agreement and judgment is to be given full faith and credit, and that neither party shall attack in any other court the provisions set forth herein."
Two months after the August 1997 judgment was signed, David Bonar brought a rule for contempt and to specify conditions of visitation, which resulted in a judgment rendered on August 5, 1998. That judgment set forth a specific visitation schedule and made arrangements for handling of expenses. The judgment ordered the parties "to consult and attempt to agree in advance for the visitation schedule for the coming year," failing which either party was to have the right to petition the court for resolution of the visitation schedule. Finally, the judgment stated, "The Court retains continuing, exclusive jurisdiction of the case under the provisions of La. R.S. 9:355.17, to enforce the terms of custody and visitation and to resolve any future disputes."[1]
On September 3, 1998, less than one month after issuance of that judgment, Kimberly Bonar filed a petition in a Georgia court seeking modification of visitation rights. David Bonar filed an objection to the jurisdiction of the Georgia court.
On September 24, 1998 David Bonar filed a rule in the Louisiana court to modify visitation. Kimberly Bonar filed an exception to subject matter jurisdiction, on the basis that Georgia had become the children's home state by virtue of their length of residence there, under the Uniform Child Custody Jurisdiction Act, La. R.S. 13:1700-1725, and that parties may not confer subject matter jurisdiction by consent.
On November 9, 1998 the Superior Court of Stewart County, Georgia overruled David Bonar's objection and found that Georgia had jurisdiction in the matter. The Georgia court found that Kimberly Bonar had been a resident of Stewart County, Georgia for more than six months prior to the filing of her petition; that the parties' children reside in Stewart County, Georgia, and had resided in that state and county for more than 12 months; that Stewart County, Georgia, was the home state of the children at the time of commencement of the proceeding therein; and had been the home state of the children for more than six months prior to commencement of the proceeding.
The Georgia court acknowledged the Louisiana consent judgment of August 18, 1997, the modification of the visitation provisions thereof by the judgment of August 5, 1998, and the divorce judgment, and made those rulings judgments of the Georgia court pursuant to the applicable Georgia statute, O.C.G.A. § 19-9-43. The court found that its jurisdiction was "not inconsistent with 28 U.S.C. § 1738(a)."[2] The court then ordered the parties to attempt resolution of the visitation issue by settlement negotiations and/or mediation within the next 60 days and to submit a stipulated judgment, in lieu of which the court would enter its own order.
On December 15, 1998 the Louisiana court denied Kimberly Bonar's exception *197 of lack of subject matter jurisdiction. In written reasons for judgment, the trial court found that "Louisiana continues to have jurisdiction under La. R.S. 9:355.17, as protected by the P.K.P.A." Kimberly Bonar sought writs from this Court.
While the writ application was awaiting decision, David Bonar filed a rule to modify visitation and fix visitation dates for the year 1999-2000. Kimberly Bonar once again excepted to the subject matter jurisdiction of the Louisiana court. On September 29, 1999 the district court again denied Kimberly Bonar's exception. The court rendered judgment setting out a specific schedule of visitation for the years 1999-2000, concluding with the following order: "[T]he prior judgment setting forth the terms of custody and visitation are to remain in full force and effect, except to the extent modified herein. Per La. R.S. 9:355.17 and the prior judgments of this Court, the Court retains continuing, exclusive jurisdiction of this case."
From that judgment Kimberly Bonar filed the instant appeal. She contends the trial court erred in finding that Louisiana is the children's home state under the Uniform Child Custody Jurisdiction Act (U.C.C.J.A.), in finding that Louisiana courts are best able to ascertain the best interests of the children, in exercising jurisdiction when a prior proceeding had been filed in Georgia, and in finding that exclusive jurisdiction language in the consent judgment regarding continuing subject matter jurisdiction is valid and enforceable.
After the appeal was filed but prior to its being lodged, this Court issued a ruling on Kimberly Bonar's writ application from the district court's December 1998 denial of her exception to subject matter jurisdiction. We denied the application for the following reasons:
WRIT DENIED.
Under La. R.S. 9:344.2[sic], that portion of the revised statutes relative to custody orders and relocation of a child's residence (R.S. 9:355.1 et seq.) is applicable to orders issued on or after August 15, 1997. In the present matter, a consent judgment granting joint custody and permitting the children to have their residence with Mrs. Bonar was entered on August 18, 1997. Following a rule to show cause in which Mrs. Bonar appeared, another consent judgment was entered into on August 5, 1998 modifying and specifying conditions of visitation. The trial court specifically retained jurisdiction under La. R.S. 9:344.17[sic] to enforce the terms of custody and visitation and to resolve any future disputes. La. R.S. 9:344.1[sic] et seq. is the latest, as well as the most specific expression of legislative will on the issue of continuing jurisdiction in cases involving relocation of children and is therefore applicable to the present matter.[3]
Further, under the Uniform Child Custody Jurisdiction Act, Mrs. Bonar filed an action in Georgia on September 3, 1998. At that time Louisiana had, and maintained, jurisdiction over custody and visitation matters. Under La. R.S. 13:1706, a court which has jurisdiction to make an initial or modification decree may decline to exercise its jurisdiction if it finds that it is an inconvenient forum to make a determination under the circumstances of the case and that a court of another state is a more appropriate forum. On the showing made, consideration of the factors enumerated in that section do not mandate that Louisiana decline continuing jurisdiction. Mrs. Bonar filed her action in Georgia days after consenting to jurisdiction and to the specific terms of the Louisiana judgment.
*198 Bonar v. Bonar, 99-C-94 (La.App. 5 Cir. 12/20/99).
On this appeal Mr. Bonar, the appellee, asserts we should consider the writ ruling as law of the case because "[t]he writ denial was not simply a refusal to review the decision. To the contrary, the Court specifically addressed the jurisdictional issues and rendered written reasons." Relying on "law of the case" doctrine, Mr. Bonar urges us to refuse to reconsider the jurisdictional issue.
In Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105, 107-108 (1971), our Supreme Court set out an explanation of "law of the case" which has remained the most-cited definition of the doctrine:
With regard to an appellate court, the `law of the case' refers to a policy by which the court will not, on a subsequent appeal, reconsider prior rulings in the same case. This policy applies only against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court.... Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both parties, of affording a single opportunity for the argument and decision of the matter at issue.
Nevertheless, the law-of-the-case principle is applied merely as a discretionary guide: Argument is barred where there is merely doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice. Further, the law-of-the-case principle is not applied so as to prevent a higher court from examining the correctness of the ruling of the previous court. [Footnotes and citations omitted.]
The Day court noted further, "The `law of the case' principle also relates to the binding force of the trial court rulings during later stages of the trial and to the conclusive effect of appellate rulings at the trial on remand." 256 So.2d at 107 n. 1. The court also pointed out:
[T]he phrase, `law of the case', as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.' This decision also notes that a higher court is not bound by the `law of the case' as decided on earlier appeals by intermediate courts.
256 So.2d at 108 n. 3.
This court has applied the "law of the case" doctrine to rulings made on writ applications, even to writ denials.[4] However, the Supreme Court has indicated that writ denials should not form the basis for application of the doctrine.[5] Accordingly, because our prior ruling was a writ denial, in the interest of justice we shall give full review to the issue.
We find that Louisiana has continuing jurisdiction under La. R.S. 9:355.17. In 1997 the Louisiana legislature added new provisions to Title 9 of the Revised Statutes to govern custody matters involving relocation. Acts 1997, No. *199 1173, § 1, consisting of La. R.S. 9:355.1-9:355. 17. Under La. R.S. 9:355.2, the new subpart applies to an order regarding custody or visitation with a child issued on or after August 15, 1997. Thus, the provisions apply here, where the first judgment was issued on August 18, 1997.
La. R.S. 9:355.17 provides, "If the court grants authorization to relocate, the court may retain continuing, exclusive jurisdiction of the case after relocation of the child as long as the non-relocating parent remains in the state." Clearly that provision fits the facts in this case. The applicability of the section is disputed between the parties, however.
Appellant contends, first, that Georgia, not Louisiana, is the children's "home state" as defined in the U.C.C.J.A. In Louisiana the U.C.C.J.A. was adopted as La. R.S. 13:1701, et seq. La. R.S. 13:1702 provides for jurisdiction as follows, in pertinent part:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
* * *
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
Kimberly Bonar moved to Georgia with the children in August 1997. Within the first six months after they left, not only did the Louisiana court issue the first custody/visitation judgment (August 18, 1997), but also David Bonar instituted a proceeding for modification of visitation (October 9, 1997), which was not concluded until the judgment of August 5, 1998.
Under the provisions of La. R.S. 13:1702(A)(1)-(2) Georgia has become the "home state" of the children. Nevertheless, the Louisiana judgment contained the continuing jurisdiction provision authorized by La. R.S. 9:355.17 and the Georgia court erred in failing to give that provision full faith and credit.
Although the Georgia judgment recited that the Louisiana judgments were adopted by and made judgments of the Georgia court, the Georgia court failed to acknowledge the continuing jurisdiction provisions in the Louisiana judgments. Such a failing conflicts with federal law.
28 U.S.C. § 1738A, popularly known as the Parental Kidnapping Prevention Act (P.K.P.A.), is titled "Full faith and credit to be given to child custody determinations." It reads in pertinent part as follows:
(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
* * *

*200 (c) A child custody determination made by a court of a State is consistent with the provisions of this section only if 
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
* * *
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
* * *
(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make custody determination.
Louisiana's jurisdiction has continued under 28 U.S.C. § 1738A(d) because at the time David Bonar's rule for modification was commenced Louisiana had jurisdiction under La. R.S. 9:355.17 arising from the 1997 consent judgment; Louisiana had not ceased to be the children's home state; and David Bonar continues to be a resident of this state.
Appellant argues that La. R.S. 9:355.17 cannot apply because there was no petition for authorization to relocate the children, citing the language, "If the court grants authorization to relocate, the court may retain continuing exclusive jurisdiction." (Emphasis added.) We disagree that a petition for authorization to relocate was necessary: the court granted authorization to relocate via the pronouncement in the consent judgment which not only was an agreement between the parties, but also was a judgment of the court.
Appellant also contends that La. R.S. 9:355.17 conflicts with La. R.S. 13:1702. However, we note that the PKPA takes precedence over the UCCJA.
The Parental Kidnaping Prevention Act (PKPA or Act) imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act. In order for a state court's custody decree to be consistent with the provisions of the Act, the State must have jurisdiction under its own local law and one of five conditions set out in § 1738A(c)(2) must be met. Briefly put, these conditions authorize the state court to enter a custody decree if the child's home is or recently has been in the State, if the child has no home State and it would be in the child's best interest for the State to assume jurisdiction, or if the child is present in the State and has been abandoned or abused. Once a State exercises jurisdiction consistently with the provisions of the Act, no other State may exercise concurrent jurisdiction over the custody dispute, § 1738A(g), even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree. [Footnotes omitted.]
*201 Thompson v. Thompson, 484 U.S. 174, 175-177, 108 S.Ct. 513, 514-515, 98 L.Ed.2d 512 (1988). "[T]he PKPA is a mandate directed to state courts to respect the custody decrees of sister States." Thompson, 484 U.S. at 183, 108 S.Ct. at 518.
We liken the situation here to that in Heartfield v. Heartfield, 749 F.2d 1138 (5th Cir.1985), in which the parents divorced in Texas and the custodial mother moved to Louisiana with the children. The father remained in Texas. The mother attempted to obtain a Louisiana court order to modify the visitation provisions of the Texas judgment. The father asked the federal district court to issue an injunction against the Louisiana litigation, which was granted, and the mother appealed to the federal circuit court. The federal Fifth Circuit noted that Texas, under its own laws, had retained exclusive jurisdiction as to all aspects other than custody. Therefore, the court concluded, under the terms of the PKPA and the Texas Family Code, Texas had exclusive jurisdiction to issue visitation and child support orders. Heartfield, 749 F.2d at 1143.
Finally, appellant argues that the court's retention of jurisdiction violates La. C.C.P. art. 3. Article 3 states that subject matter jurisdiction cannot be conferred by consent of the parties. Here, however, the court had and lawfully retained its jurisdiction, as discussed above. Thus, Article 3 does not apply.
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.
NOTES
[1] This is a typographical error; the court was referring to La. R.S. 9:355.17.
[2] The correct designation of the statute is 28 U.S.C. § 1738A.
[3] The references to "9:344 ..." are typographical errors. The correct designation for the statutes in question is "9:355 ...."
[4] See, e.g., Franklin Southland Printing Co., Inc. v. New Orleans Aviation Bd., 99-60 (La. App. 5 Cir. 7/27/99), 739 So.2d 977, 982-983; Ficarra v. Mount Vernon Fire Ins. Co., 527 So.2d 493, 494 (La.App. 5 Cir.1988).
[5] See Cutrer v. Mid-Continent Group, 99-1402 (La.7/2/99), 747 So.2d 23, 24 (Lemmon, J., concurring in writ denial); Griggs v. Riverland Medical Center, 99-0385 (La.5/28/99), 735 So.2d 622 (Lemmon, J., concurring in writ denial); Trahan v. McManus, 97-1224 (La.3/2/99),728 So.2d 1273, 1283 n. 4; In re Quirk, 97-1143 (La.12/12/97), 705 So.2d 172, 182 n. 17; Tolis v. Board of Sup'rs of Louisiana State University, 95-1529 (La.10/16/95), 660 So.2d 1206, 1207; Mohr v. Lloyds of London Ins. Co., 590 So.2d 1200, 1200-1201 (La.1992) (Lemmon, J., concurring in writ denial).