836 So.2d 185 (2002)
William Joseph SHAMP
v.
Jennifer Jiles JEZEK.
No. 2002 CU 1346.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
*186 Charlotte A. Pugh, Denham Springs, for Plaintiff/Appellant, William Joseph Shamp.
Paul M. Hebert, Jr., Baton Rouge, for Defendant/Appellee, Jennifer Jiles Jezek.
Before: CARTER, C.J., WHIPPLE and CIACCIO, JJ.[1]
WHIPPLE, J.
Plaintiff, William Joseph Shamp, appeals from a judgment of the Family Court of East Baton Rouge Parish ("Family Court") granting defendant's, Jennifer Jiles Jezek's, motion to transfer jurisdiction of this child custody and visitation matter to the District Court of Tom Green County, State of Texas. For the following reasons, we affirm the trial court's judgment transferring jurisdiction herein.

FACTS AND PROCEDURAL HISTORY
The parties hereto are the biological parents of P.S., now three years old. P.S., the child whose custody is at issue herein, was born on July 24, 1999. Although the parties sporadically and briefly resided together, they never married. However, Mr. Shamp was present at the child's birth and signed a formal acknowledgement of paternity. Shortly thereafter, in early October of 1999, Ms. Jezek moved to San Angelo, Texas with the infant and her three children born from a previous marriage. On October 18, 1999, Mr. Shamp filed suit against Ms. Jezek in the Family Court of East Baton Rouge seeking to "confirm" his paternity of P.S., and upon "verification of paternity," to establish visitation.
Mr. Shamp eventually dismissed his request for paternity testing and in a stipulated judgment signed on February 8, 2000, the parties agreed that joint custody should be awarded, with Ms. Jezek designated as the domiciliary parent, and that the parents would subsequently confect or have the court establish a visitation plan. Almost seven months later, on August 7, 2000, the Family Court signed a judgment establishing an interim visitation schedule. Pursuant to the Family Court's judgment of December 6, 2000, a permanent visitation schedule eventually was established.
On December 7, 2000, Mr. Shamp filed a rule for contempt, re-calculation of child support, and other relief, including a demand that the Family Court retain exclusive jurisdiction of this matter. In response, on January 23, 2001, Ms. Jezek filed a motion in the Family Court requesting that the court transfer the matter to Texas, contending that as of December 7, 2000, she had filed an "Original Petition to Modify Possession Rights and Duties of Conservators" in the District Court of Tom *187 Green County, Texas in the matter entitled "In the Interest of [P.S.], A Minor Child" under Cause No. D-00-1424-F.
Both Mr. Shamp's rule requesting that the Family Court of East Baton Rouge retain exclusive jurisdiction and Ms. Jezek's motion to transfer the matter to Texas were not heard by the Family Court until November 13, 2001. A decision was rendered and entered into the minutes on November 26, 2001, and a judgment in conformity therewith was signed on January 17, 2002, granting the motion to transfer the matter to Texas.
Mr. Shamp appeals, contending that the Family Court erred in transferring the matter to Texas, as the Family Court retained exclusive and continuing jurisdiction under either LSA-R.S. 9:355.17 and/or LSA-R.S. 13:1700, et seq. and/or the Parental Kidnapping Prevention Act ("PKPA" or "the Act").

DISCUSSION
On appeal, Mr. Shamp contends that the transfer of this matter to San Angelo, Texas will assure prejudicial results against him and in Ms. Jezek's favor. Additionally, he asserts that because she relocated the minor child to Texas without his express consent or approval, he should not be forced to litigate this matter in Texas. Ms. Jezek counters in brief that she did not request a transfer to gain judicial favor, but, rather, because Louisiana was no longer a convenient forum for her to litigate these proceedings.
In support of his argument that the Family Court erred, Mr. Shamp cites LSA-R.S. 9:355.17 which provides as follows: "If the court grants authorization to relocate, the court may retain continuing, exclusive jurisdiction of the case after relocation of the child as long as the non-relocating parent remains in the state." Contending that LSA-R.S. 9:355.17 applies and is controlling herein, Mr. Shamp cites Bonar v. Bonar, 2000-232 (La.App. 5th Cir.8/29/00), 768 So.2d 194.
In Bonar, the appellate court determined that it was not necessary to file a petition seeking the court's authority to relocate pursuant to LSA-R.S. 9:355.17 where the parties had previously stipulated in a consent judgment that "this agreement and judgment is to be given full faith and credit, and that neither party shall attack in any other court the provisions set forth herein." Bonar, 2000-232 at p. 3, 768 So.2d at 196.
However, in the instant case, there is no stipulation that jurisdiction was to remain in Louisiana; Ms. Jezek did not seek the Family Court's authorization to relocate; and Mr. Shamp does not challenge her relocation. Instead, on appeal, Mr. Shamp is not challenging Mr. Jezek's physical relocation to Texas with the child, but the Family Court's transfer of jurisdiction of this matter. Thus, LSA-R.S. 9:355.17, on its face, is not truly determinative herein.
However, Mr. Shamp also contends the PKPA applies herein and is determinative of jurisdiction of this matter. He argues that the Family Court erred in transferring the matter to Texas based upon its erroneous application of the Uniform Child Custody Jurisdiction Act ("UCCJA"), codified as LSA-R.S. 13:1700, et seq., in contravention of the provisions of the PKPA.
28 U.S.C. § 1738A, entitled "Full faith and credit given to child custody determinations" and referred to as the "Parental Kidnapping Prevention Act," provides, in pertinent part:
(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g) and (h) of this section, any custody determination or visitation made consistently with the *188 provisions of this section by a court of another State.
(b) [Definitions omitted]
(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) [Emergency provisions omitted]
(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
(d) The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
(e) [Notice provisions omitted]
(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if
(1) it has jurisdiction to make such a child custody determination; and
(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.
(h) A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination.
As stated in the legislative preamble of the PKPA, the Act was enacted to:
(b) ... establish a national system for locating parents and children who travel from one such jurisdiction to another and are concealed in connection with *189 such disputes, and to establish national standards under which the courts of such jurisdictions will determine their jurisdiction to decide such disputes and the effect to be given by each such jurisdiction to such decisions by the courts of other such jurisdictions.
The general purposes of the Act are to:
1) promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child;
2) promote and expand the exchange of information and other forms of mutual assistance between States which are concerned with the same child;
3) facilitate the enforcement of custody and visitation decrees of sister States;
4) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
5) avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being; and
6) deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards.
As amended Pub.L. 105-374, § 1, Nov. 1998, 112 Stat. 3383; Pub.L. 106-386, Div. B, Title III, § 1303(d), Oct. 28, 2000, 114 Stat. 1512. (Emphasis added.)
Congress designed the PKPA to remedy the defects of the UCCJA with a uniform federal statute. Meade v. Meade, 812 F.2d 1473, 1476 (4th Cir.1987). The PKPA imposes a duty on the states to enforce a child custody determination entered by a court of a sister state if the determination is consistent with the provisions of the Act. Thompson v. Thompson, 484 U.S. 174, 175-177, 108 S.Ct. 513, 514-515, 98 L.Ed.2d 512 (1988). Generally, once a state exercises jurisdiction consistently with the provisions of the Act, no other state may exercise concurrent jurisdiction over the custody dispute even if it would have been empowered to take jurisdiction under state law, and all states must accord full faith and credit to the first state's ensuing custody decree. Thompson, 484 U.S. at 175-177, 108 S.Ct. at 514-515, 98 L.Ed.2d at 512. Thus, the PKPA preempts the UCCJA, LSA-R.S. 13:1700 et seq., in the event of concurrent jurisdiction. Atkins v. Atkins, 623 So.2d 239, 242 (La.App. 2d Cir.1993).
In the instant matter, the Family Court stated in its reasons for judgment that "[t]he issue before the Court is whether or not it is appropriate for this Court to assert subject matter jurisdiction." Mr. Shamp argues that the Family Court erred by concluding that it was "inappropriate" for the Family Court in Louisiana to maintain jurisdiction by erroneously determining that Texas was the "home state" of the minor child and incorrectly applying the less stringent standards enlisted in the UCCJA rather than the preemptive provisions of the PKPA under Bonar. He contends that, pursuant to the provisions of the PKPA, more particularly 28 U.S.C. § 1738A(d), Louisiana retains exclusive jurisdiction because one parent (Mr. Shamp) continues to reside in Louisiana and P.S. has some connection with the decree state. While we agree that the PKPA is controlling herein, we disagree that the PKPA dictates that jurisdiction remain in Louisiana, given the facts as established in the record and considered by the Family Court in its decision to transfer jurisdiction.
*190 The record reflects that in October of 1999, Ms. Jezek moved to Texas after the birth of P.S. On October 18, 1999, Mr. Shamp filed suit in the Family Court of East Baton Rouge Parish to "verify" his paternity of P.S. Eventually, the parties' respective rights were established under a custody order and visitation schedule formulated in the Family Court of East Baton Rouge Parish.
At the hearing, Ms. Jezek stated that she initially moved to Baton Rouge because her former husband had been transferred there by his employment with the WMCA. However, after the move to Baton Rouge, she and her husband subsequently divorced. She stated that she first considered moving back to Texas when her former husband moved to Jacksonville, Florida after their divorce. She stated she had attended high school and college in Texas and considered it her home. Further, she testified while she has no relatives in Louisiana, she has extended family, including two sisters and nieces, who reside in the state of Texas, factors which affected her decision to move. One of her sisters resided in San Angelo, Texas. She stated that her sister helped her find employment and a home in San Angelo. Her sister also assisted her in caring for P.S. and her other three sons on those occasions when the children became sick and unable to attend school. She testified that one of the main reasons she moved to Texas with the children was that her former husband left her in financial straits after their divorce. In particular, she stated that he had filed bankruptcy proceedings, resulting in the foreclosure of her home in Baton Rouge.
At the hearing and on appeal, Mr. Shamp contends that Ms. Jezek's motives were malicious and that the move and transfer of jurisdiction were designed by her to force him to marry her or to gain favorable treatments. On review, we find no merit to these assertions. As the record demonstrates, the parties were not romantically involved at the time Ms. Jezek moved and the parties clearly had no intentions of resuming their relationship. Ms. Jezek testified that during the pregnancy, she realized that the relationship was not "working out" and Mr. Shamp suggested that she move then. She stated that the only reason she stayed in Louisiana during the pregnancy was to maintain her medical insurance benefits. She candidly admitted that although she had not informed Mr. Shamp of the exact date of her move, he was aware that she was searching for a home and a job in San Angelo, and she informed him that she had given her two-week notice to her employer. She stated that she informed him that she had to be out of her house by the 15th of the month because that was when the rent was due. Ms. Jezek further stated that she did not advise Mr. Shamp of the exact date of her move because she did not want him to cause any problems or make a scene in front of her children.
Ms. Jezek testified that it was a financial strain to continue to return to Louisiana for litigation of these proceedings and that up until the time of the hearing, she had returned to Louisiana approximately every two months for court appearances. Each appearance required her to take time off from work and make arrangements to leave her children.
Under the PKPA, a state court is required to enforce a child custody or visitation order entered by a foreign state court and, generally, cannot modify the order if the foreign state court initially had jurisdiction and continued to exercise jurisdiction to modify its own order under the laws of its state. 28 U.S.C. § 1738A(a), (d), and (h). However, as noted above, under the PKPA, such jurisdiction is retained *191 until the initial state declines jurisdiction as permitted by subsections (f) and (h) of the Act. In re Marriage of Wiseman and Dorshorst, 316 Ill.App.3d 631, 636, 737 N.E.2d 325, 330, 249 Ill.Dec. 935, 940 (2000). As Ms. Jezek correctly argues, this is a discretionary call to be made by the issuing court after consideration of all relevant facts and circumstances.
The PKPA was designed to prevent jurisdictional conflicts and competition between states over child custody and in particular to deter parents from abducting children for purposes of obtaining custody awards. Holm v. Smilowitz, 83 Ohio App.3d 757, 769, 615 N.E.2d 1047, 1054 (1992). In the instant matter, we find no error by the Family Court.
There is no jurisdictional conflict in the case sub judice, as the Louisiana Family Court properly declined to continue to exercise jurisdiction, as permitted by the Act, and reasonably concluded that Texas was a more appropriate forum. The objective of the PKPA to provide interstate cooperation in resolving child custody disputes has been met and the "full purpose and objective of Congress" in enacting the legislation has neither been violated nor obstructed under the facts of this case. See Holm, 83 Ohio App.3d at 769, 615 N.E.2d at 1055.
Considering the circumstances presented herein, and the provisions of the PKPA and the above jurisprudence, we find no abuse of discretion by the Family Court in declining to exercise continuing jurisdiction in Louisiana and in transferring jurisdiction to Texas.
We find no merit to this assignment.

CONCLUSION
For the above and foregoing reasons, the January 17, 2000 judgment of the Family Court granting Ms. Jezek's motion to transfer is affirmed. Costs of this appeal are assessed against the appellant, William Joseph Shamp.
AFFIRMED.
CARTER, J., concurs.
NOTES
[1] Judge Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.