In re MARRIAGE OF MELANIE C. WISEMAN, f/k/a Melanie C. Dorshorst, Petitioner-Appellant, and RONALD J. DORSHORST, Respondent-Appellee.

Second District   No. 2—99—1226

Opinion filed October 3, 2000.

Robert G. Black, of Law Offices of Robert G. Black, of Naperville, for appellant.

Alan J. Toback, of Lake, Toback & Yavitz, of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The petitioner, Melanie C. Wiseman, f/k/a Melanie Dorshorst, appeals the trial court's decision dismissing her motion to modify a custody and visitation judgment entered by a Wisconsin state court. We affirm.

The petitioner, Melanie C. Wiseman, f/k/a Melanie Dorshorst (mother), and the respondent, Ronald J. Dorshorst (father), were married in Wisconsin in 1986. They had two children, Trent, born in 1987, and Tara, born in 1990. The parties subsequently dissolved their marriage in Wisconsin in 1993. By agreement entered by the Dane County, Wisconsin, state court, the parties shared joint custody of the children, but the mother had primary physical placement and control of the children. The father had placement of the children on alternating weekends and holidays and for six weeks in the summer.

On June 2, 1997, the mother filed a request with the Wisconsin court requesting permission to move herself and the children to the north or west suburbs of Chicago, Illinois. The father filed a petition to prohibit removal. In response to the petitions, the Wisconsin court appointed a guardian *ad litem* for the children. On August 1, 1997, the mother and the children moved to Lisle, Illinois. On October 7, 1997, the Wisconsin state court entered an agreed revised judgment allowing the mother to move to Illinois with the children. The Wisconsin court also ordered the parties to attend co-parenting counseling in

Wisconsin. Visitation was modified as follows: the mother continued to have primary physical placement of the children, and the father had physical placement on approximately alternating weekends, with adjustments made for holidays and other school breaks. The father also had physical placement for summer break through July. The agreed order provided that transfers of the children occurred:

"[A]t 5:30 p.m. at Belvidere, Illinois oasis directly off from [*sic*] Interstate 90. All driving shall be done by a parent, step-parent, grandparent, aunt or uncle, or another adult both parents have agreed is an acceptable driver."

On June 30, 1999, the mother filed a motion in Du Page County, Illinois, to modify visitation based on a substantial change in circumstances. The mother asserted that the transportation obligation was too burdensome because of her work schedule. It was difficult for the mother to drive the children 90 to 100 miles to the meeting place every other Friday by 5:30 p.m. because of her work schedule and the traffic. It was also too burdensome for the mother to pick the children up from Rockford, Illinois, approximately 120 miles from her Lisle home. The mother asserted that these arrangements prevented the children from fully participating in their chosen activities. The mother also alleged that the father slept in the same bed as Tara, their 10-year-old daughter, exposed both of the children to pornography, and failed to secure the children with safety belts while driving.

The father was served with a summons on July 23, 1999, and later made a special limited appearance on August 16, 1999, to contest jurisdiction. On August 13, 1999, the father filed a motion in the Wisconsin state court to modify the judgment as to physical placement and child support. The father also filed a rule to show cause and an attached affidavit alleging that the mother violated the judgment by failing to attend co-parenting counseling as previously ordered by the Wisconsin state court.

On August 25, 1999, in response to the mother's request, the Du Page County court entered the Wisconsin judgment of dissolution of marriage and the modification judgment.

On September 2, 1999, the Wisconsin state court wrote the mother requiring her to cooperate with co-parenting counseling with the Dane County, Wisconsin, family court counseling service and to attend a joint mediation session on September 8, 1999. The court advised the mother that both requirements were subject to penalties for contempt. The mother received this letter on September 7, 1999.

On September 9, 1999, the mother filed an emergency motion, requesting the Du Page County court to stay the proceedings initiated by the father in Dane County, Wisconsin. The mother alleged that she

did not receive proper notice of the father's motions filed in Dane County, Wisconsin, beginning with the father's August 13, 1999, motion to modify judgment. The mother also alleged that the father failed to advise the Dane County, Wisconsin, court about the motions the mother had filed in Du Page County, Illinois.

On September 10, 1999, the mother filed a motion to amend and supplement her motion to modify to reflect the motions the father filed against her in the Dane County, Wisconsin, court. Again the mother alleged that she was not served with the pleadings the father filed in the Wisconsin court and that the father had failed to advise the Wisconsin court of the motion the mother had filed in Du Page County, Illinois. The mother also alleged that the children's medical records and potential witnesses were all located in the Du Page County and greater Chicago area.

On September 16, 1999, the father filed a motion in the Du Page County court to dismiss the mother's petition to modify visitation. The father asserted that the Du Page County court lacked jurisdiction and, alternatively, requested that the Du Page County court concede jurisdiction to the Wisconsin court pursuant to the Uniform Child Custody Jurisdiction Act (the Jurisdiction Act) (750 ILCS 35/15(a) (West 1998)) and the Parental Kidnapping Prevention Act of 1980 (PKPA) (28 U.S.C. § 1738A (1994)). The mother filed a response, arguing that the Du Page County court had jurisdiction because it was the children's home state and the children had relocated to Illinois with the Wisconsin court's permission.

On September 23, 1999, after a discussion with the Dane County, Wisconsin, state court judge, the Du Page County court stated that the Wisconsin state court refused to decline jurisdiction and continued to exercise jurisdiction. The Du Page County court also stated that Illinois was the home state of the children. Consequently, pursuant to the PKPA, the Du Page County court granted the father's motion to dismiss, declined to exercise jurisdiction, and stayed the proceedings pending the outcome of the proceedings in the Wisconsin court. The Du Page County court also denied the mother's request for an evidentiary hearing on the issue of the children's best interest under the Jurisdiction Act and found no just reason to delay enforcement or appeal of its order. The mother filed her notice of appeal on October 22, 1999.

On appeal, the mother contends that the PKPA did not, under these circumstances, prevent the Du Page County court from exercising jurisdiction to modify visitation and that the Du Page County court erred by dismissing her petition to modify without considering the best interests of the children.

Dismissal based on the lack of jurisdiction is subject to *de novo*

review when the facts are not in dispute. See *Gaidar v. Tippecanoe Distribution Service, Inc.*, 299 Ill. App. 3d 1034, 1039 (1998). Further, a trial court's interpretation of a statute is also reviewed *de novo*. *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 551 (1999).

■ Interstate custody disputes are governed by the federal Parental Kidnapping Prevention Act of 1980 (28 U.S.C. § 1738A (1994)) and the Uniform Child Custody Jurisdiction Act (codified in Illinois as 750 ILCS 35/1 *et seq.* (West 1998)).

The Illinois version of the Jurisdiction Act provides in pertinent part:

"§ 4. Jurisdiction. (a) The circuit courts have jurisdiction to make a child custody determination by initial or modification judgment if:

1. this State
(i) is the home state of the child at the time of commencement of the proceeding, \*\*\*
\*\*\*
2. it is in the best interest of the child that a court of this State assume jurisdiction because
(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and
(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships \*\*\*." 750 ILCS 35/4 (West 1998).

"§ 15. Modification of Custody Judgment of Another State. (a) If a court of another state has made a custody judgment, a court of this State shall not modify that judgment unless:
\*\*\*
2. the court of this State has jurisdiction." 750 ILCS 35/15 (West 1998).

Thus, under the Illinois Jurisdiction Act, an Illinois court has jurisdiction to modify a child custody order of a foreign state if Illinois was the home state of the child or had been the home state within six months before the commencement of the proceeding and a parent continued to live in Illinois. This applies to visitation orders as well, since the definition of "custody determination" includes court orders providing visitations rights. 750 ILCS 35/3.02 (West 1998).

In contrast, under the federal PKPA, once a foreign state makes a custody or visitation judgment, another state may modify that judgment only if it has jurisdiction and the foreign state "no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify" its previous determination. 28 U.S.C.A. § 1738A(f) (West 1994); see also 28 U.S.C.A. § 1738A(h) (West Supp. 2000). The PKPA provides in pertinent part:

"(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State.

\* \* \*

(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

\*\*\*

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding[.]

\* \* \*

(d) The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of the section continues to be met and such State remains the residence of the child or of any contestant.

\*\*\*

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

\*\*\*

(h) A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination."
28 U.S.C.A. § 1738A (West 1994 & Supp. 2000).

Thus, under the federal PKPA, a state court is required to enforce a child custody or visitation order entered by a foreign state court and, generally, cannot modify the order if the foreign state court initially had jurisdiction and continued to have jurisdiction to modify its own order under the laws of its own state. 28 U.S.C. §§ 1738A(a), (d) (1994). Further, and most importantly for our purposes here, under the PKPA, the foreign state's right to modify is exclusive; a state may not modify the custody or visitation judgment of a foreign state court unless the foreign state court declines jurisdiction. 28 U.S.C. §§ 1738A(f), (h) (1994 & Supp. 1998). This conflicts with the Jurisdiction Act, which theoretically permits concurrent jurisdiction of more than one state. See *Wilcox v. Wilcox*, 862 S.W.2d 533, 540 (Tenn. Ct. App. 1993).

■ Under the supremacy clause of the United States Constitution, a federal law preempts a conflicting state law and the state law is nullified to the extent that it actually conflicts with federal law. U.S. Const., art. VI; *People v. Lewis*, 295 Ill. App. 3d 587, 589 (1998), citing *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98, 120 L. Ed. 2d 73, 84, 112 S. Ct. 2374, 2383 (1992). Thus, we join our sister states by determining that, in cases of conflict between the federal PKPA and our state's version of the Jurisdiction Act, the federal PKPA prevails. See, *e.g.*, *Shook v. Shook*, 651 So. 2d 6, 8 (Ala. Civ. App. 1994); *Rogers v. Rogers*, 907 P.2d 469, 471 (Alaska 1995); *In re Adoption of Child by T.W.C.*, 270 N.J. Super. 223, 233, 636 A.2d 1083, 1088 (1994); *Wilcox v. Wilcox*, 862 S.W.2d 533, 539 (Tenn. Ct. App. 1993); *Welborn-Hosler v. Hosler*, 870 S.W.2d 323, 326-27 (Tex. Ct. App. 1994). While we agree with the mother that decisions of foreign jurisdictions are not controlling (*Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 152 (1996)), we find their analyses persuasive, especially in light of the fact that we have not found any state court decision holding that the PKPA does not preempt the Jurisdiction Act in cases of conflict.

■ To determine whether the Wisconsin state court continued to have exclusive jurisdiction to modify its judgments in this case under the PKPA, we must determine whether Wisconsin had jurisdiction to enter the original and modified visitation judgment under its own laws. 28 U.S.C.A. §§ 1738A(c)(1), (d) (West 1994 & Supp. 2000). The Wisconsin version of the Jurisdiction Act provided that Wisconsin had jurisdiction if it was the home state of the children at the time of the commencement of the proceedings. Wis. Stat. Ann. § 822.03(1)(a) (West 1994). In this case, it is undisputed that the Wisconsin court had jurisdiction at the time it entered the initial judgment; both parents and both children had resided in Wisconsin since the birth of the children. Wis. Stat. Ann. § 822.03(1)(a) (West 1994). Thus, the original judgment was made consistently with the provisions of the PKPA. 28 U.S.C. §§ 1738A(a), (c)(1) (1994 & Supp. 1998).

In addition, the record reveals that the Wisconsin state court *continued* to have jurisdiction at the time the mother petitioned the Du Page County court to modify the Wisconsin judgment. 28 U.S.C. §§ 1738A(c)(1), (d) (1994 & Supp. 1998). The Wisconsin version of the Jurisdiction Act provided that Wisconsin had jurisdiction if, *inter alia*, the children and at least one contestant had a "significant connection" with Wisconsin and there was available in Wisconsin substantial evidence concerning the children's present or future care, protection, training, and personal relationships. Wis. Stat. Ann. § 822.03(1)(b) (West 1994). It was uncontroverted that the father continued to reside in Wisconsin. The children, who were 9 (Tara) and 12 (Trent) when

their mother filed for modification in Du Page County, had lived in Wisconsin for the first 7 (Tara) and 10 (Trent) years of their lives. The children participated in numerous activities in Wisconsin, such as church attendance, swimming lessons, and Girl Scouts while they resided in Wisconsin. Further, the children's paternal grandparents, maternal grandmother, numerous aunts, uncles, and cousins, including those from the mother's side of the family, numerous friends of the children, the children's step-sister from the mother's prior marriage who lived with the mother's former husband, and the father's child from his first marriage all resided in Wisconsin. In addition, two counselors who had met with the children and the children's pediatricians resided in Wisconsin. Thus, the record contained ample evidence that the children had a significant connection with the State of Wisconsin and that Wisconsin continued to have jurisdiction when the mother filed her petition to modify in the Du Page County court. See 28 U.S.C. §§ 1738A(f), (g) (1994); Wis. Stat. Ann. § 822.03(1)(b) (West 1994). Because the Wisconsin court expressly refused to decline jurisdiction and, in fact, continued to exercise jurisdiction by ordering the mother to comply with its previous order regarding co-parenting counseling, the Du Page County court properly dismissed the mother's motion to modify and stayed the proceedings. See 28 U.S.C. §§ 1738A(f), (g) (1994). We recognize that the Du Page County court did not expressly find that the children had significant connections with Wisconsin; however, we may affirm on any basis supported by the record. See *Village of Round Lake v. Amann*, 311 Ill. App. 3d 705, 717 (2000).

The mother argues that the PKPA did not apply in this case because this case did not involve kidnapping or child abduction. However, contrary to the mother's assertion, the purpose of the PKPA is not only to prevent kidnapping. Rather, "[i]t applies generally to situations of interstate custody disputes." *In re K.G.*, 876 P.2d 1, 6 (Colo. App. 1993).

Next, we address the mother's argument that the Du Page County court erred by failing to hear evidence regarding the best interest of the children. Under the facts of this case, the Du Page County court did not have jurisdiction under the federal PKPA to modify the Wisconsin judgment. Under these conditions, nothing in the PKPA required the court to hear evidence regarding the children's best interest. Accordingly, the Du Page County court properly dismissed the mother's petition to modify visitation without hearing evidence regarding the children's best interest. The mother cites *In re Marriage of James*, 259 Ill. App. 3d 29 (1994), *In re Marriage of Los*, 229 Ill. App. 3d 357 (1992), and *Moseley v. Goldstone*, 89 Ill. App. 3d 360 (1980), to

support her argument. However, the courts in these cases did not determine that the PKPA and the Illinois Jurisdiction Act were in conflict; thus, these cases are not controlling here.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN, P.J., and HUTCHINSON, J., concur.