812 A.2d 1082

**Nicole BRITTON**

v.

**Kerry C. MEIER.**

No. 765, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Dec. 20, 2002.

Samuel J. Brown (Jonathan E. Pasterick and Hillman, Brown & Darrow, P.A. on the brief), Annapolis, for appellant.

Erin Darner Gable (Dalnekoff & Mason, P.A. on the brief), Annapolis, for appellee.

Argued Before HOLLANDER, ADKINS and KRAUSER, JJ.

KRAUSER, Judge.

The issue before us is which state—Maryland or Illinois—may exercise jurisdiction over a visitation dispute between a Maryland mother and an Illinois grandfather, when the visitation of the grandfather was originally ordered by an Illinois court with the mother's consent. Holding that Illinois has continuing jurisdiction over this dispute, the Circuit Court for Anne Arundel denied the motion of the mother, appellant Nicole Britton, to terminate the rights of the grandfather, appellee Kerry C. Meier, to visit her four-year old daughter, Savanna Marie Britton, and then dismissed her case. In doing so, it erred.

Although this case is not a dispute between parents and certainly does not involve kidnaping, we are constrained to agree that Illinois has continuing jurisdiction over this dispute, under the Parental Kidnaping Prevention Act of 1980 ("PKPA"), 28 U.S.C. § 1738A (2000). Indeed, we do not quarrel with either the circuit court's interpretation or application of that act—only the implementation of its decision. Once it concluded that under the PKPA Illinois had jurisdiction, it should have contacted its Illinois counterpart before dismissing this case, to determine if that court wished to decline jurisdiction in deference to Maryland, Savanna's home state. Its failure to do so constitutes reversible error.

### FACTS

On January 18, 1998, appellant Nicole Trinski Britton gave birth to Savanna Marie Britton in Lake County, Illinois.[1] Savanna's father was Michael Craig Meier. Before Savanna's birth, Michael died in a work-related accident. Nicole and Michael never married.

After his death, Michael's estate received a workers' compensation award on behalf of his heir and daughter, Savanna,

---

1. "Nicole Edith Trinski" is appellant's maiden name and apparently appears on Savanna's birth certificate. In this case, however, appellant is referred to as "Nicole Britton."

and a wrongful death suit was filed. At that time, Michael's father, appellee Kerry C. Meier, successfully petitioned to be appointed administrator of Michael's estate.

After DNA testing confirmed that Michael was Savanna's biological father, appellee filed a petition, on June 15, 1999, for grandparent visitation in the Circuit Court of the Nineteenth Judicial Circuit in McHenry County, Illinois. Before the matter could be heard, the parties agreed upon a visitation schedule and, with their consent, the court issued an order on November 22, 1999, granting visitation to appellee, his wife and daughter, with Savanna on "the third Saturday or Sunday of every month for four hours at the residence of Savanna Britton." [2] It also required that appellee give appellant seventy-two hours notice of the day of visitation and that, unless otherwise agreed, appellant must be included in any visitation that involved taking Savanna from appellant's residence.

Before the issuance of that order, appellant moved with Savanna from Illinois to Maryland. On June 16, 2000, appellant filed "with the [Illinois] Court a Petition to Remove Respondent, Kerry C. Meier, as Independent Administrator of the Estate of Michael C. Meier." Among the reasons cited by appellant for appellee's removal was appellee's "announced intention to seek further DNA testing to determine the father and child relationship between the deceased and his only daughter and heir of the estate, Savanna Marie Britton." The record does not indicate the present status of that petition.

On or about June 25, 2000, appellee, exercising his visitation rights, visited Savanna in Maryland. Following that visit, on June 28, 2000, appellant filed in Illinois an Emergency Motion for Protective Order. In that motion, appellant stated that appellee had tried, during his recent visit, to "obtain[ ] a hair sample from Savanna to conduct a second DNA test." That effort included pulling Savanna's hair. As a result, appellant requested, among other things, that the Illinois court "enter a

---

**2.** While that order also grants "Mr. Meier's wife" visitation with Savanna, appellee indicates in his brief that he and his wife were actually divorced at that time.

protective order preventing Respondent from taking any additional steps to obtain a second DNA test to determine the father and child relationship between Michael Craig Meier and Savanna."

In October 2000, appellee, according to the April 3, 2001 order of the circuit court, "was denied visitation of his granddaughter as a result of a Petition for Ex Parte Relief that was filed by Nicole Britton alleging the same facts as in the Emergency Motion she had filed with the Illinois Court."

On October 23, 2000, appellant filed *pro se* in the Circuit Court for Anne Arundel County a motion seeking to enroll and then modify the Illinois visitation order. After discovering that the motion was miscaptioned, appellant, with the assistance of counsel, filed an amended motion. In that motion, appellant sought to enroll the Illinois decree and modify it "to terminate all visitation."

In support of her request for termination of visitation, appellant claimed that appellee had previously questioned whether his son was Savanna's father and that, once it was established that he was, appellee was only interested in Savanna because she was the "only other heir in line" to "get all of the proceeds from the wrongful death case" involving her father. She explained that appellee's "sole interest in Savanna is to either have control of her funds thereby obtaining sufficient money on his behalf from the estate of the deceased." She further maintained that appellee's "intention by having visitation with [Savanna was] to simply try and either disprove paternity or get rid of [Savanna] so that [Savanna] will not be an heir to any money received as a result of the wrongful death action which has been filed on behalf of [Michael]." She also claimed that "[t]he current visitation by [Savanna] with the [appellee was] detrimental to the minor child's health." In support of the latter claim, she asserted "that the visitation has not gone well in the past in that [appellee] causes substantial psychological damage to the minor child and the minor child's sibling."

In Illinois on November 21, 2000—between the time appellant filed her *pro se* and amended motions—appellee filed a Petition for Rule to Show Cause why he was being denied visitation rights with Savanna. The hearing on this petition began on December 6, 2000, but was continued until January 4, 2001, because the Illinois court found that although notice had been given, the "rule to show cause" had not been served. Although appellant was not present, the Illinois court changed appellee's visitation schedule, allowing "visitation beginning the third Saturday of each month at 10:00 A.M. through Sunday (the following day) at 8:00 P.M .... not ... at the residence of Nicole Britton, but ... at such places as Kerry Meier determines." The only condition that it placed on appellee was that "Kerry Meier shall, however, provide Nicole Britton with the address and telephone of the place where they will spend Saturday nights, in case of emergency."

On January 4, 2001, the Illinois hearing that had been postponed on appellee's Petition for Rule to Show Cause was held. Appellant was not present, but her counsel apparently was. The court ordered that the visitation schedule modified on December 6 was to remain in effect. It further ordered that appellant appear before it on February 22, 2001, to show cause why she should not be held in contempt for failing to abide by the court's orders.

On January 19, 2001, appellee filed in the Anne Arundel circuit court a Motion to Dismiss for Lack of Subject Matter Jurisdiction. In a "directive," [3] filed on February 13, 2001, the Honorable Nancy Davis–Loomis of that court stated that "[t]he Illinois Judgment is enrolled pursuant to the Motion to Enroll the Foreign Judgment."

---

**3.** This document is listed in the index of the record of this case as "DIRECTIVE FROM JUDGE DAVIS LOOMIS." In his opinion denying appellant's motion to enroll and vacate, Judge Lerner refers to it as the "blue note." In that opinion, Judge Lerner states that "the fact that Judge Nancy Davis Loomis signed a blue note indicating that the Illinois judgment is enrolled pursuant to the Motion to Enroll the Foreign Judgment has no bearing on the issue in this case." Neither party challenges that assertion on appeal.

On April 2, 2001, the Honorable Eugene M. Lerner of the Circuit Court for Anne Arundel County conducted a hearing on appellee's motion to dismiss. After that hearing, the court granted the motion to dismiss and denied appellant's motion to enroll the Illinois order and to modify visitation. This appeal followed.

### Standard of Review

"The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct. In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Fioretti v. Md. State Bd. of Dental Exam'rs,* 351 Md. 66, 71–72, 716 A.2d 258 (1998) (citations omitted). In reviewing the complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Id.* at 72, 716 A.2d 258; *see also Bennett Heating & Air Conditioning, Inc. v. NationsBank of Md.,* 342 Md. 169, 174, 674 A.2d 534 (1996); *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993); *Berman v. Karvounis,* 308 Md. 259, 264–65, 518 A.2d 726 (1987). "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Faya,* 329 Md. at 443, 620 A.2d 327; *see also Bobo v. State,* 346 Md. 706, 709, 697 A.2d 1371 (1997).

### DISCUSSION

Appellant contends that the circuit court erred in denying her motion to enroll and vacate the Illinois visitation order at issue. Maryland, she asserts, had jurisdiction to consider her motion, while Illinois did not. Appellant's motion, we agree, should not have been so peremptorily denied, but not for the reason advanced by appellant. Indeed, the circuit court was correct: Illinois, as the state of initial jurisdiction, had exclusive jurisdiction over this matter. But it erred, we hold, in dismissing appellant's motion before contacting its Illinois counterpart to determine whether it wished to decline jurisdiction in favor of Maryland, Savanna's home state.

Two acts govern interstate custody and visitation disputes: the federal PKPA and the Uniform Child Custody Jurisdiction Act ("UCCJA"). The UCCJA has been adopted by all fifty states and the District of Columbia. *Malik v. Malik*, 99 Md.App. 521, 526, 638 A.2d 1184 (1994). Maryland and Illinois are, of course, no exception; they adopted the UCCJA with only minor changes. *See* Md.Code (1999 Repl.Vol. & 2002 Supp.), §§ 9–201–224 of the Family Article ("FL"); 750 Ill. Comp. Stat. Ann. ("ILCS") 35/1–26 (West 1999).

When there is a conflict between the PKPA and state law, the PKPA, under the Supremacy Clause, prevails. *Malik*, 99 Md.App. at 528, 638 A.2d 1184 (citing U.S. Const art. VI, cl. 2.). This case presents such a conflict: While the UCCJA does not necessarily require Maryland to defer jurisdictionally to Illinois, the PKPA does.

In fact, under FL § 9–204(a) of the Maryland UCCJA, the circuit court did have subject matter jurisdiction to modify the Illinois order at issue. That subsection states:

(a) Grounds for Jurisdiction.—A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:

(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this State;

(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least 1 contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the

child's present or future care, protection, training, and personal relationships;

FL § 9–204(a)(1), (2).

While this section does not expressly mention "visitation," it does apply to interstate visitation disputes as the Maryland UCCJA defines a "[c]ustody determination" as "a judicial decision, order, or instruction that relates to the custody of a child or to *visitation rights*." FL § 9–201(c) (emphasis added). More important, because this section defines "home state" as, among other things, "the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least 6 consecutive months," FL § 9–201(f), Maryland was Savanna's home state at the time appellant filed her motion to enroll and vacate the Illinois visitation order, a fact not disputed by either party here. Hence, as Savanna's home state, Maryland did have jurisdiction, under FL § 9–204(a)(1), to hear appellant's claim. But that, as we shall see, does not dispose of this issue.

Although Maryland has jurisdiction under FL § 9–204(a)(1) "to decide child custody matters [by] ... modification decree," it may not exercise that jurisdiction unless it first determines, under FL § 9–214(a), that the initial decree-rendering state does not meet the jurisdictional requirements of the Maryland UCCJA. *Harris v. Melnick*, 314 Md. 539, 547–48, 552 A.2d 38 (1989). FL § 9–214(a) states:

(a) Jurisdictional requirements.—If a court of another state has made a custody decree, a court of this State shall not modify that decree unless (1) it appears to the court of this State that the court that rendered the decree does not now have jurisdictional prerequisites substantially in accordance with this subtitle or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction.

In other words, the court below had jurisdiction to consider appellant's motion, as Savanna's home state under FL § 9–204(a), once it determined, under FL § 9–214(a), that Illinois

had either declined jurisdiction or did not have "jurisdictional prerequisites substantially in accordance with" Maryland law. To determine what those jurisdictional prerequisites are, we must return to FL § 9–204, specifically FL § 9–204(a)(2).

Although that subsection is couched solely in language stating what criteria Maryland must meet to assume jurisdiction over an interstate custody dispute, that same language has been read as setting forth the criteria or, in the words of FL § 9–214, the "jurisdictional prerequisites" that must be met by the state of initial jurisdiction to retain jurisdiction. *See L.G. v. People*, 890 P.2d 647, 659 & n. 22 (Colo.1995); *Kumar v. Kumar*, 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003, 1007 & n. 7, 1008 (1982); *Szmyd v. Szmyd*, 641 P.2d 14, 17 n. 7, 18 (Alaska 1982); *Grubs v. Ross*, 291 Or. 263, 630 P.2d 353, 360 (1981). This bouncing back and forth between FL § 9–204 and FL § 9–214, which the UCCJA requires a court to do whenever it reviews an interstate custody or visitation dispute, is confusing if not at times confounding. *See Harris*, 314 Md. at 551, 552 A.2d 38 ("The textual structure of the Uniform Act has undoubtedly helped to blur the distinction between initial jurisdiction and jurisdiction to modify, and to obscure the duty of nonmodification."). The act demands that a court consult FL § 9–204 to determine if Maryland has jurisdiction. Upon concluding it does, the court is then required to review FL § 9–214 to determine whether it can exercise that jurisdiction. But that question cannot be answered unless the court then returns, undirected by that provision, to FL § 9–204 to consult a list of "jurisdictional prerequisites," cast in language that refers only to the assumption of jurisdiction by Maryland, not its loss by other states.

In any event, FL § 9–204 permits Maryland to assume jurisdiction if "it is in the best interest of the child that [Maryland] assume jurisdiction because (i) the child and the child's parents, or the child and at least 1 contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relation-

ships." Put another way, Maryland may modify the Illinois decree if Illinois does not meet the "significant connection" and "substantial evidence" requirements of FL § 9–204(a)(2). See, *e.g.*, *Kumar,* 186 Cal.Rptr. 772, 652 P.2d at 1008. That same criteria, as we have noted, applies to other states to determine whether they satisfy the jurisdictional requirements of Maryland law. If they do not, and Maryland does, then, under the Maryland UCCJA, this State may assume jurisdiction. This of course puts the Maryland UCCJA in conflict with the PKPA in this case.

Under the PKPA, because Illinois had initial jurisdiction over this matter, Maryland may not modify the Illinois visitation order at issue here, regardless of whether Illinois satisfies Maryland's jurisdictional requirements, so long as Illinois has jurisdiction under Illinois law and Illinois remains the residence of the child or any contestant. § 1738A(c)(1), (d), (h); *see also In re Marriage of Wiseman,* 316 Ill.App.3d 631, 249 Ill.Dec. 935, 737 N.E.2d 325, 330 (2000).

■ Subsection 1738A(h) of the PKPA states that "[a] court of a State may not modify a visitation determination made by another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination." That is to say, as long as the court that entered the initial visitation or custody order continues to have jurisdiction under its own law and has not declined jurisdiction, the PKPA precludes another state court from modifying the initial order. *See Shanoski v. Miller,* 780 A.2d 275, 278 (Me.2001); *Moore v. Richardson,* 332 Ark. 255, 964 S.W.2d 377, 381–82 (1998); *Wiseman,* 249 Ill.Dec. 935, 737 N.E.2d at 330; *McLain v. McLain,* 569 N.W.2d 219, 223–24 (Minn.Ct.App.1997); *see also* Patricia M. Hoff et al., *Interstate Child Custody Disputes and Parental Kidnapping* 3–42 (1982)("The PKPA provides that the jurisdiction of a court which has made a decree consistently with its terms continues, so long as the court continues to have jurisdiction under state law (i.e., UCCJA), and that state remains the residence of at least one contestant or the child.").

Illinois has, to be sure, jurisdiction over this matter under its own law. The Illinois UCCJA states that Illinois, "having obtained jurisdiction over a child, shall retain such jurisdiction unless it concedes jurisdiction to a foreign state or none of the parties to the action, including the child, remain in Illinois." 750 ILCS 35/4(b). What is more, one of this dispute's contestants, the appellee, continues to reside there. Having satisfied both conditions of § 1738A(h), Illinois has continuing jurisdiction over this matter.

Because Illinois has such jurisdiction over this issue, a Maryland court can modify the Illinois order, under § 1738A(h), only if Illinois declines jurisdiction. But here the Maryland circuit court did not contact its Illinois counterpart to determine if that court wished to do so before dismissing this case. That was error.

In this regard, we note that FL § 9–206(c) provides that, "[i]f the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum." Although no litigation may have been technically pending in Illinois at the time that appellant's motion was before the circuit court, the policy underlying § 9–206(c) applies with equal force to the instant case. Had the circuit court contacted the Illinois court before deferring to that court and dismissing this case, Illinois might have, under the circumstances of this case, declined jurisdiction in favor of Maryland. Indeed, there is every reason to believe it would have. It is Maryland, not Illinois, that now is Savanna's home state. It is Maryland, not Illinois, that now has the most significant connection with Savanna. And it is Maryland, not Illinois, where evidence concerning Savanna's "future care, protection, training, and personal relationships" is probably most available. FL § 9–204(a)(2).

Also, this is not a visitation dispute between parents but between a surviving parent and a paternal grandfather. The former, as a parent, has a fundamental right to "make decisions concerning the care, custody and control" of her child; the latter, as a grandparent, does not. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In fact, appellant's relationship with Savanna is constitutionally protected while appellee's is not. *Id.* What is more, grandparents in Illinois no longer have even a statutory right of visitation. The Illinois statute securing grandparent visitation was struck down for, among other things, failing to give sufficient weight to parental choice. *Wickham v. Byrne*, 199 Ill.2d 309, 263 Ill.Dec. 799, 769 N.E.2d 1, 8 (2002). Because appellant has a substantially greater interest at stake here than appellee does, it may be said that Maryland, as appellant's home state, has a substantially greater interest in the outcome of this dispute than Illinois does, as appellee's home state.

Indeed, given the substantial disparity in the respective interests of Maryland and Illinois in this matter, Illinois may choose to defer to Maryland on the issue of visitation. We shall therefore remand this case to the circuit court so that it can consult with its Illinois counterpart to determine whether that court will decline jurisdiction over this dispute. If the Illinois court chooses to do so, then the circuit court shall consider the merits of appellant's request.

**JUDGMENT VACATED. CASE REMANDED TO CIRCUIT COURT TO PROCEED IN ACCORDANCE WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**